# EXHIBIT A

1

**THE RUSSELL'S LAW FIRM, P.L.C.**
202 E. WILCOX DR.

2   SIERRA VISTA, AZ 85635
Tel: (520)-458-7246

3   Fax: (855)-778-5559
By: D. Christopher Russell, Esquire

4   State Bar No.22674
courtdocs@russellslawfirm.com

5   Attorney for Plaintiff

6               IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
                    IN AND FOR THE COUNTY OF COCHISE

7   WILLIE F. WILLIAMS, JR A/K/A          Case No.: **CV201700682**

8   WILLIE WILLIAMS

9                   Plaintiff.            **SUMMONS**

10  vs.

11  ATLANTIC SPECIALTY                    Judge: _Div. 2_
    INSURANCE COMPANY, a New York

12  Corporation,

13                  Defendant. .

14

15  THE STATE OF ARIZONA to the above-named Defendant **ATLANTIC SPECIALTY**

16  **INSURANCE COMPANY:**

17  **YOU ARE HEREBY SUMMONED** and required to appear and defend in the above entitled

18  court, within TWENTY DAYS, exclusive of the day of service, after service of this summons

19  upon you, if served within the State of Arizona, or within THIRTY DAYS, exclusive of the day

20  of service, if served without the State of Arizona, and you are hereby notified that in case you

21  fail to do so, judgment by default will be rendered against you for the relief demanded in the

22  complaint.

    The name and address of the Plaintiff's attorney is **D. Christopher Russell, THE RUSSELL'S**

23  **LAW FIRM, PLC, 202 E. Wilcox Dr., Sierra Vista, Arizona 85635.**

24          **NOTICE: REQUESTS FOR REASONABLE ACCOMMODATION FOR**
            **PERSONS WITH DISABILITIES MUST BE MADE TO THE COURT IN**

25          **WRITING AT LEAST THREE DAYS IN ADVANCE OF A SCHEDULED**
            **COURT HEARING.**

26

27

28

                              - 1 -
                            [Summons]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MARY ELLEN DUNLAP**

Clerk of the Superior Court

By: _____

**Deputy Clerk**

DATED this *14th* day *December*, 2017.

1  **THE RUSSELL'S LAW FIRM, PLC**
   202 E Wilcox Dr
2  SIERRA VISTA, ARIZONA 86535
   (520) 458-7246
3  By: D. Christopher Russell
   State Bar No.: 022674
4  courtdocs@russellslawfirm.com
5  **Attorneys for Plaintiff**

F I L E D

2017 DEC 14  PM 1: 11

CLERK OF SUPERIOR COURT

6          **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**
7          **IN AND FOR THE COUNTY OF COCHISE**

8  WILLIE F. WILLIAMS, JR. A/K/A
   WILLIE WILLIAMS,                    Case No.: **CV 2 0 1 7 0 0 6 8 2**
9
          Plaintiff,
10
   ATLANTIC SPECIALTY              **COMPLAINT**
11 INSURANCE COMPANY, a New       (Breach of Contract; Tort non-motor vehicle)
   York Corporation,
12                                 (Jury Trial Demanded)
          Defendant.
13

14         The Plaintiff, by and through his undersigned attorney, for his Complaint

15 against the Defendant herein, alleges and shows the Court as follows:

16                        **PARTIES/JURISDICTION**

17 1.    Plaintiff Willie F. Williams, Jr. a/k/a Willie Williams (hereinafter "Plaintiff")

18 at all times relevant herein has been a resident of Cochise County Arizona.

19 2.     That Defendant, Atlantic Specialty Insurance Company (hereinafter "ASIC"),

20 is a New York corporation authorized as a foreign insurer in the State of Arizona and

21 is registered with the Arizona Department of Insurance to sell insurance in the State of

22 Arizona; that upon information and belief, ASIC is a wholly owned subsidiary of

23 OneBeacon Insurance Group, Ltd.

24 3.     Defendant ASIC is engaged in business in Cochise County, Arizona and has

25 sold an insurance policy for which the Plaintiff was the beneficiary/insured in Cochise

   County, Arizona.

   *Complaint-Williams v. Atlantic Specialty Insurance Company, et al*

                        **PAGE 1 OF 18**

4.    Pursuant to A.R.S. §20-221 Defendant ASIC may be served with legal process by serving its statutory registered agent, to wit:

> Director of Insurance
> 2910 N. 44th St., 2nd floor
> Phoenix, AZ 85018

5.    That the amount in controversy herein meets the threshold necessary to vest jurisdiction in the Cochise County Superior Court of Arizona.

6.    That the Defendant has entered into contracts with the Plaintiff in Cochise County, Arizona, and that Defendant has caused acts, events, omissions and occurrences of which the Plaintiff presently complains in Cochise County, Arizona; that venue is thereby proper in the Cochise County Superior Court of Arizona.

7.    That Defendant has consented to personal jurisdiction in the State of Arizona. A.R.S. § 20-221; *Bohreer v. Erie Ins. Exchange*, 216 Ariz. 208 (2007).

8.    The Plaintiff reserves the right to amend any and all portions of this complaint up to the time of trial of this matter.

9.    Plaintiff demands a trial by jury for this matter.

## GENERAL ALLEGATIONS

10.    At all times relevant herein, Plaintiff was working for a company known as Andrews Van Lines, Inc. as a commercial truck driver of household goods, which involved loading household goods into a commercial truck and then transporting them to another location and unloading them—in other words, he was working in the household goods moving business.

11.    Plaintiff is the beneficiary/insured of an insurance policy, Policy Number 216-001-711 (the "Policy") issued by Defendant ASIC on or about May 1, 2014 attached hereto as **Exhibit 1**. The insurance coverage afforded under the Policy was in effect at all times material hereto.

12.    A copy of the Declarations page is attached hereto as **Exhibit 2**.

13.    The Policy and Declaration pages together indicate the parties intended the Plaintiff to benefit from the Policy and that he was a primary party in interest.

14.    All premiums due under the insurance policy were paid by payroll deduction from Plaintiff's wages through Andrews Van Lines, Inc.

15.    The Policy is an "Occupational Accident" insurance policy which represents that it provides temporary and continuous total disability benefits to Plaintiff in the event of an accident which prevents him from performing the *"Material and Substantial Duties of [his] occupation as a commercial truck driver with "Material and Substantial Duties" defined as [his] duty or duties which [he ] was required to perform as an Owner-Operator or Contract Driver"*.

16.    The policy has a contractual suit limitation period which states "No action on the policy may be brought until sixty (60) days after written Proof of Loss has been sent to Us.  Any action must commence within three (3) years....of the date the written Proof of Loss was **required** to be submitted." [Policy at. P. 20] (emphasis added).

17.    The policy also states "We will send the claimant Proof of Loss (claim) forms within fifteen (15) days after We receive notice.  If the claimant does not receive the forms in fifteen (15) days after submitting notice, he or she can send Us a detailed written report of the claim and the extent of the loss."

18.    No Proof of Loss Form was ever provided to Plaintiff or requested by ASIC.

19.    ASIC never requested a Proof of Loss during the claims process nor did anyone from ASIC ever mention that Plaintiff needed to send any such proof.

20.    The reasonable expectation of the parties was that the policy would insure Plaintiff for the loss of his ability to perform his then occupation as a commercial truck driver of household goods which included duties of loading and unloading household goods involving heavy lifting greater than 20 lbs.

21.     The policy was issued to Andrews Van Lines, Inc. as the participating organization through Trucking Industry Group Insurance Trust and Plaintiff was named as eligible insured of the policy; the Plaintiff paid all premiums as required when due.

22.     Plaintiff had no negotiations with Defendant regarding any of the terms of the policy, nor was he given any such opportunity.

23.     Plaintiff was unaware that the policy contained various clauses which attempt to take away his Seventh Amendment right to a jury trial, force a foreign State's law upon him, etc. nor was he ever provided any opportunity to negotiate those terms.

24.     Plaintiff expected the policy to provide disability benefits to him in the event that he was injured and unable to perform his duties as a commercial truck driver of household goods.

25.     Plaintiff was injured on or about December 16, 2014 when he fell from a ladder while moving household goods during a job for Andrews Van Lines, Inc.

26.     Plaintiff loss consciousness as a result of the fall for a period of 20-30 minutes.

27.     When Plaintiff awoke, his neck, back and shoulder were in severe pain.

28.     Plaintiff called Andrews Van Lines, Inc. on or about December 16, 2014 to report the accident.

29.     Plaintiff reported the accident by telephone to ASIC on or about December 16, 2014.

30.     Plaintiff provided to ASIC at least two signed authorizations for ASIC to obtain his medical records, one dated January 22, 2015 and one dated April 22, 2015. These were blank authorizations which authorized ASIC to obtain any of Plaintiff's medical records from any provider.

31.     Plaintiff called ASIC adjusters numerous times after reporting his claim to request assistance with getting medical attention but adjusters were either slow to return his calls or failed to return his calls at all, and he did not receive any assistance with his claim or in getting medical treatment.

32.     When Plaintiff was able to speak to an adjuster, he was told that the claim was still under investigation.

33.     Plaintiff was in pain and unable to pay his bills while he waited for Defendant ASIC to pay him benefits owed under the policy.

34.     Due to his injuries, Plaintiff could not lift more than 20 lbs or sit for long periods of time without excruciating pain.

35.     Because Plaintiff's work with Andrews Van Lines, Inc. required sitting for prolonged periods of time and heaving lifting of household furniture and goods, Plaintiff could not return to his work as a commercial truck driver of household goods.

36.     Plaintiff's doctors restricted him from driving and advised him that he could not return to his job as a commercial truck driver.

37.     Plaintiff continued to see doctors for continued and ongoing pain in his neck, back and left shoulder which began as a direct result of the covered accident.  Plaintiff also had objectively significant decreased range of motion in his left shoulder and could not lift without extreme pain.

38.     Because Defendant failed to assist him with his claim and failed to pay for medical treatment as required by the policy, Plaintiff was forced to seek treatment from the Veterans Administration.  Getting appointments and referrals to the right specialists at the VA is very difficult and a very slow process.

39.     Due to the slow medical treatment Plaintiff was forced to accept as a direct result of Defendant's failure to pay medical benefits, the discovery of Plaintiff's true diagnosis related to the pain in his shoulder was delayed until September 23, 2016 when VA doctors finally performed an MRI of Plaintiff's left shoulder which showed

a "severe supraspinous tendinosis with near full-thickness tear" commonly referred to as a rotator cuff tear.

40.     Plaintiff provided a copy of the September 23, 2016 MRI to Defendant along with a letter from his doctor that restricted his ability to lift to less than 20 lbs.

41.     Plaintiff communicated his pain and inability to lift numerous times to Defendant ASIC as well as his inability to return to his former job as a commercial truck driver moving household goods and pleaded for help with medical treatment to no avail, despite the policy providing coverage for medical treatment of his injuries.

42.     Over six months after the claim was initially reported, Plaintiff received a check dated June 22, 2015 in the amount of $3,500.00.

43.     During the six month period leading up to the June 22, 2016 check, Plaintiff received no assistance with his claim nor did ASIC ask Plaintiff for any documentation.

44.     Defendant never informed Plaintiff that there was any problem with his medical documentation or that he needed to go to the doctor every month to receive benefits.

45.     After receiving the $3,500.00 check, Plaintiff called ASIC numerous times to report his ongoing problems with pain in his neck, back and shoulder.

46.     Plaintiff continued to contact ASIC to report his pain and his treatment with VA doctors as recommended, which included physical therapy and chiropractic care; Plaintiff explained numerous times that he could not lift and was in extreme pain.

47.     ASIC made no further payments on the claim and provided little to no communication on the status of the claim.

48.     ASIC never requested Plaintiff's medical records from the VA where he received most of his treatment, despite being given a Release of Information and being told that this is where Plaintiff was being treated.

49.     ASIC never sent any functional limitation reports to any of Plaintiff's doctors nor did ASIC make any attempt to contact Plaintiff's doctors to discuss his injuries.

50.     ASIC failed to adequately investigate Plaintiff's claim in violation of A.R.S. § 20-461(A)(3) & (4).

51.     ASIC failed to assist Plaintiff with his claim in good faith.

52.     ASIC failed to communicate with Plaintiff regarding the status of his claim in violation of A.R.S. § 20-461(A)(2).

53.     ASIC failed to communicate policy provisions relating to the need for monthly care.

54.     After Plaintiff made numerous phone calls to ASIC demanding payment of his benefits under the policy, Representatives from ASIC stated that they had another check for Plaintiff in the amount of $3,500.00 but that payment was contingent upon Plaintiff signing a Release of all Claims against Defendant, in violation of A.A.C. R20-6-801(D)(5).

55.     On or about July 16, 2017, Mike Klug, Senior Claims Representative for ASIC, sent Plaintiff's non-lawyer representative an email stating "attached is a release in the agreed-upon amount of $3,500" and attaching a Release for him to sign stating this is the "full and final settlement of his claim". See Email with attached Release attached hereto as **Exhibit C.**

56.     Plaintiff never made any agreement to "settle" the claim.

57.     Thereafter, Plaintiff sought legal representation and eventually retained counsel.

58.     Through Plaintiff's counsel, Plaintiff requested documentation from ASIC related to his insurance application, which he is entitled to pursuant to the terms of his policy.

59.     Defendant failed to respond to requests for information related to Plaintiff's application for the policy.

60.     A demand for payment of all benefits owed under the policy was made to Defendant on or about November 6, 2017; said demand also put Defendant on notice of its bad faith claims handling.

61.     Plaintiff submitted copies of all of his medical records related to his injury with the November 6, 2017 demand letter as well as copies of is 2013, 2014, and 2015 1099s.

62.     On December 7, 2017, Defendant responded to said demand by stating that no further benefits are owed to Plaintiff.  This is the first ever written denial provided to Plaintiff in nearly three years of handling the claim—just days before the contractual suit limitation period is due to end.

63.     In its December 7, 2017 letter stating that no further benefits are owed, the Defendant raised numerous **never before mentioned** reasons for not having paid the claim to include over payment, failure of notice, lack of monthly doctor care, failure to pay premiums, other work, no social security award, etc.

64.     By never having raised any issue of notice in the entire three years of handling the claim, Defendant has waived lack of notice.

65.     By never having raised any issue with "monthly doctor care" or in any way communicating with Plaintiff that this was an issue, Defendant has also waived the right to insist upon strict compliance with this provision.

66.     By not paying any benefits for over six months, Defendant is equitably estopped from relying on income from other work offsets because Plaintiff was forced to work in pain after not receiving the benefit of his contract.

67.     As a direct result of Defendant's bad faith handling of his claim and failure to timely pay benefits, Plaintiff has suffered months of pain and suffering while being forced to work a job that causes him extreme pain.

*Complaint-Williams v. Atlantic Specialty Insurance Company, et al*

## COUNT ONE

### (Breach of Contract)

68.     The Plaintiff hereby incorporates in its entirety the foregoing allegations and contents of this Complaint herein as if the same were fully set forth.

69.     On about or between May 1, 2014 and May 19, 2014, Plaintiff entered into a contract for insurance with the Defendant and was the insured under the policy.

70.     In the alternative, Plaintiff was the beneficiary and insured to a contract for insurance with the Defendant; the parties intended that the Plaintiff directly benefit from the contract; the parties intended to recognize the Plaintiff as the primary party in interest; the contract itself indicates an intent to benefit Plaintiff as an eligible class of persons that includes the Plaintiff.

71.     Plaintiff suffered losses covered by the contract for insurance and made proper claims to Defendant for benefits due under the policy.

72.     Defendant's refusal to pay benefits owed in a timely manner under the contract constitutes a breach of Defendant's obligation to provide benefits.

73.     That on or about November 6, 2017, the Plaintiff made written demand for the payment of the sums due and owing to him under the terms of the contract; that as a result of said demand, the amount due and owing is in the form of liquidated damages presently and the Plaintiff is entitled to pre-judgment interest at the legal rate per annum; that the Plaintiff is entitled to post-judgment interest at the legal rate per annum until the judgment taken is paid in full.

74.     That the failure of the Defendant to pay the demanded amount which is due and owing to the Plaintiff within a reasonable time constitutes a material breach of the contract entitling the Plaintiff to damages; that as a direct and proximate result of the breach of the contract at issue, the Plaintiff has incurred attorney fees, costs and other out-of-pocket expenses which would not have normally been incurred but for the breach of the contract.

75.    Plaintiff is entitled to collect any and all attorney fees incurred in the prosecution of this matter pursuant to A.R.S. §§ 20-406 and 12-341.01.

76.    Plaintiff is entitled to collect any and all costs incurred in the prosecution of this matter pursuant to A.R.S. § 12-341.

**WHEREFORE**, the Plaintiff, having stated Count One of this Complaint against the Defendant herein, prays as follows:

1.    That judgment be entered in his favor and he be awarded any and all sums necessary to fairly compensate him for any and all damages incurred as a result of the material breach of the contract at issue;

2.    That the Plaintiff be awarded pre-judgment interest on liquidated damages, at the statutory rate per annum until such time as the Plaintiff obtains a judgment against the Defendant;

3.    That the Plaintiff is entitled to post judgment interest at the statutory rate per annum until the judgment obtained by the Plaintiff is paid in full;

4.    That judgment be entered in his favor and he be awarded any and all costs incurred in the prosecution of this matter pursuant to A.R.S. § 12-341;

5.    That judgment be entered in his favor and he be awarded any and all attorney fees incurred in the prosecution of this matter pursuant to A.R.S. §§ 20-406 and § 12-341.01; and,

6.    For such other and further relief as the Court deems just and proper in the premises.

**COUNT TWO**

**(Bad Faith-Tort)**

77.    The Plaintiff hereby incorporates in its entirety the foregoing allegations and contents of this Complaint herein as if the same were fully set forth herein.

78.    That in every contract (insurance policy) there is an implied covenant of good faith and fair dealing.

79.    That Defendant owed Plaintiff a duty of due care and a duty to act fairly and in good faith and not do anything that prevented the Plaintiff from receiving the benefits of the policy.

80.    In all aspects of investigating or evaluating the Plaintiff's claim(s) Defendant owed Plaintiff a duty to give as much consideration to Plaintiff's interests as it did its own interest.

81.    Defendant breached its duties by failing to adequately investigate the claim in a timely manner; by failing to communicate with Plaintiff regarding the claim in a timely manner; by failing to provide required forms and to inform Plaintiff of policy provisions of which he need to comply; by refusing to pay benefits in a timely manner; by refusing to pay benefits in unreasonable reliance upon ambiguous and conflicting policy language which conflicts with the stated purpose of the policy without a reasonable basis for such action; by intentionally and/or recklessly denying Plaintiff benefits where Defendant knew or should have known that its interpretation of the policy was unreasonable and in bad faith; by relying upon exclusions that were not applicable and/or not supported by the facts, and/or in conflict with the reasonable expectations of the parties and the purpose of the policy; by relying upon a copy of the policy that had never been provided to the Plaintiff; by making payment of an undisputed amount owed to Plaintiff contingent upon signing a settlement release; by failing to deny the claim in writing until 11 days before the contractual suit limitation period expired; by not disclosing its reasons for denial until 11 days before the contractual suit limitation period preventing Plaintiff from ever responding or curing denial reasons within time to insure compliance for coverage; and by generally failing to comply with Arizona administrative rules for handling insurance claims.

82.   That as a direct and proximate result of said material breach of the covenant of good faith and fair dealing, the Plaintiff has suffered damages in an amount to be proven at trial.

83.   Defendant's actions, conduct and omissions were intentional, and or in reckless disregard of the policy benefits, lacked a reasonable basis, were designed to deceive, were performed by an evil hand guided by an evil mind and were intended in all respects to defraud Plaintiff out of the benefits under the policy, that as a result of said conduct, the Plaintiff is entitled to an award of punitive damages against the Defendant, in an amount sufficient to deter said Defendant and others similarly situated from engaging in the same or similar conduct in the future; that the Defendant, knew or should have known that its conduct, intentionally fraudulent in nature, posed a substantial risk of causing severe harm to the Plaintiff.

84.   That as a direct and proximate result of said material breach of the covenant of good faith and fair dealing, the Plaintiff has incurred attorney fees and litigation expenses; Plaintiff is entitled to any and all attorney fees incurred in the prosecution of this matter pursuant to ARS §§ 20-406 and 12-341.01.

85.   That the Plaintiff is entitled to an award of any and all costs necessarily incurred in the prosecution of this matter pursuant to ARS § 12-341.

86.   That Plaintiff is entitled to both pre and post judgment interest.

**WHEREFORE**, the Plaintiff having stated Count Two of this Complaint against the Defendant herein, prays as follows:

1.   That the Plaintiff be awarded any and all damages that have resulted naturally and directly from the breach, to include, but not limited to: the unpaid benefits of the policy, the monetary loss or damage to Plaintiff's credit reputation experienced and reasonably probable to be experienced in the future, for pain and suffering, for emotional distress, humiliation, inconvenience, and anxiety already experienced, and reasonably

probably to be experienced in the future, as well as consequential damages;

2. That judgment be entered in his favor for punitive damages against the Defendant, in an amount sufficient to deter said Defendant and others similarly situated from engaging in the same or similar conduct in the future;

3. That the Plaintiff be awarded any and all attorney fees necessarily incurred in the prosecution of this matter pursuant to ARS §§20-406 and 12-341.01;

4. That the Plaintiff be awarded any and all costs necessarily incurred in the prosecution of this matter pursuant to ARS §12-341;

5. That Plaintiff be awarded both pre and post judgment interest; and,

6. For such other and further relief as the Court deems just and proper in the premises.

## COUNT THREE

### (Reasonable Expectations Doctrine / Declaratory Judgment)

87.  The Plaintiff hereby incorporates in its entirety the foregoing allegations and contents of this Complaint herein as if the same were fully set forth.

88.  The reasonable expectation doctrine relieves an insured from certain agreement provisions that he did not negotiate, probably did not read, and probably would not have understood had he read them if the drafter has reason to believe the insured would have rejected the agreement if the insured had known about the term. *State Farm Fire & Cas. Co. v. Gabrowski*, 214 Ariz. 188 (2007).

89.  Provisions in the contract which provide foreign choice of law and forced arbitration are provisions that Plaintiff did not read and could not read since the policy was provided to him after it was purchased. Nor would Plaintiff understand them if he had read them. Plaintiff would have rejected the terms had he known about the

terms.  Moreover, he had no opportunity to negotiate the terms.  Therefore, this Court should find them unenforceable against Plaintiff.

90.     Other provisions in the contract which place arbitrary and unfair limits on recovery of benefits and that defy the purpose of the policy and the expectation of the parties should be considered unconscionable, null and void and not enforced and/or Defendant should be equitably estopped from asserting.  They include the following:

a.     CTD Benefit Definitions:

*Continuous Care means at least quarterly monitoring and/or evaluation of the disabling condition by a Physician. We must receive proof of continuing Continuous Total Disability on a quarterly basis unless We agree to a longer period.*
*These requirements may be waived by Us.*

*Continuous Total Disability or Continuously Totally Disabled means disability that: (1) prevents You from performing the duties of any occupation for which You are qualified by reason of education, training or experience; (2) requires the care and treatment of a Physician; and (3) requires that, and results in. You receiving Continuous Care. If You do not adhere to the treatment plan the Physician prescribes relating to Your disabling condition. You will not qualify for a Continuous Total Disability Benefit.*

*In addition to the requirements set forth above, if You can perform an occupation which would provide an annual gross income equal to or greater than either the gross income from wages and/or the net income reported on Schedule C which You filed on Your most recent federal income tax return filed prior to the Covered Injury, You are not Continuously Totally Disabled. You must provide Us with such federal income tax return in order to qualify for a Continuous Total Disability Benefit.*

This part of the policy conflicts with the stated purpose of the policy which is to provide coverage for the loss of Plaintiff's specific occupation as a commercial truck driver.  Moreover, it renders coverage for the loss of his occupation meaningless.  Further, Defendant has waived any right to complain about strict compliance with "quarterly care" by not advising Plaintiff of this policy provision, not communicating that it must be strictly complied with, and providing no notice of failure to comply to allow him to cure.

*b.*     *CTD Benefit Qualifications:*

*If a Covered Injury to You resulting in Temporary Total Disability, subsequently results in Continuous Total Disability, We will pay the Continuous Total Disability Benefit Specified below, provided:*

*\*\*\*\**

*(2) You are under the normal Social Security retirement age, as determined by federal law, on the day after the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached; [Policy page 11].*

*(3) You have been granted a Social Security Disability Award for your disability (if You cannot meet the credit requirement for a Social Security Disability Award, You cannot qualify for Continuous Total Disability Benefit even if you would otherwise qualify);*

Plaintiff expected that he was buying private disability insurance to cover a disability for injuries that prevented him from continuing with his current occupation as an independent commercial truck driver of household goods. He did not expect his coverage to be contingent upon whether or not he would receive social security disability. If Plaintiff could qualify for social security disability, he would not need private occupational accident insurance. This clause is unconscionable and renders the policy meaningless in the event of a total disability preventing Plaintiff from returning to his occupation.

c. TTD Benefit Offsets.

*TTD Benefit Offsets.*

*\*\*\**

*(6) any income from employment or services, or from leasing Your power unit. You must provide federal income tax schedules and returns to Us for the purpose of calculating this offset.*

These provisions contradict the entire purpose of the policy—which is to insure for the loss of Plaintiff's ability to continue his occupation as a commercial truck driver

of household goods. Plaintiff did not contemplate that his benefits would be reduced if he were forced to take a job doing work outside of his occupation as an independent commercial truck driver. Money that he earns working in a position other than an independent commercial truck driver should have no impact on his ability to receive benefits and is not something Plaintiff contemplated in purchasing the policy.

d.  CTD Benefit Offsets.

*CTD Benefit Offsets.*
>  *Subject to the Minimum Weekly Benefit Amount, the Continuous Total Disability Benefit will be reduced by:*
>  ***
>  *(6) any income from employment or services, or from leasing Your power unit. You must provide federal income tax schedules and returns to Us for the purpose of calculating this offset.*

*CTD Benefit Termination.*
*The Continuous Total Disability Benefit will cease on the earliest of the following dates;*
>  *2. the date Your Social Security Disability Award ceases;*

These provisions contradict the entire purpose of the policy—which is to insure for the loss of Plaintiff's ability to continue his occupation as an independent commercial truck driver of household goods. Plaintiff did not contemplate that his benefits would be reduced if he were forced to take a job doing work outside of his occupation as an independent commercial truck driver. . Money that he earns working in a position other than an independent commercial truck driver should have no impact on his ability to receive benefits and is not something Plaintiff contemplated in purchasing the policy.

91.    Each of the above referenced provisions essentially render the entire purpose of the policy meaningless. The policy's purpose is clearly to provide protection for the loss of an "occupation" due to an accident. Yet in the fine print, Defendant seeks to contradict such coverage by making coverage contingent upon a government

finding of disability—which is governed by a complete inability to work at any job
Such contradictory language should be construed against the drafter and in favor of
coverage

   **WHEREFORE**, the Plaintiff, having stated Count Three of his Complaint
against the Defendant herein, prays as follows:

1. That this Court declare the above provisions unconscionable, unenforceable and/or null and void as being contradictory to the expectations of the parties and the expressed purpose of the policy; and,

2. For such other and further relief as the Court deems just and proper in the premises sure.

Submitted this 14th day of December, 2017.

                              **THE RUSSELL'S LAW FIRM, PLC**


                              By _____
                                     D. Christopher Russell
                                     Attorney for Plaintiff

# VERIFICATION

STATE OF ARIZONA          )
                          )ss.
County of Cochise         )

    **Willie Williams** being first duly sworn, upon his oath deposes and states as follows: That he is the Plaintiff herein, that he has read the foregoing Complaint, knows the contents thereof, and that the matters and things alleged therein are true in substance and in fact, except for those matters alleged upon information and belief, and as to those allegations, he believes them to be true.

WILLIE WILLIAMS

SUBSCRIBED AND SWORN to before me this 14 day of December, 2017.

TRACY A. LAIRD
Notary Public, State of Arizona
Coshise County
My Commission Expires
June 20, 2018

NOTARY PUBLIC
My Commission Expires: 6/20/2018

*Complaint-Williams v. Atlantic Specialty Insurance Company, et al*

**THE RUSSELL'S LAW FIRM, P.L.C.**
202 E WILCOX DR
SIERRA VISTA, ARIZONA 85635
(520) 458-7246
Fax: (855) 778-5559
By: D. Christopher Russell, Esquire
State Bar No. 022674
courtdocs@russellslawfirm.com
Attorneys for Plaintiff

FILED

2017 DEC 14 PM 1:11

DENISE LUNDIN-DUNLAP
CLERK OF SUPERIOR COURT
BY: _____

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF COCHISE

WILLIE F. WILLIAMS, JR. A/K/A
WILLIE WILLIAMS,

        Plaintiff,

vs.

ATLANTIC SPECIALTY INSURANCE
COMPANY, a New York Corporation,

        Defendant.

Case No.: **CV201700682**

**CERTIFICATE OF COMPULSORY
ARBITRATION**

Hon:_____

The undersigned certifies that the largest award sought by Plaintiffs, including punitive damages, but excluding interest, attorney's fees, and costs **EXCEEDS** the limit set by Local Rule for compulsory arbitration.  This case **IS NOT** subject to the Uniform Rules of Procedure for Arbitration.

      DATED this 14TH day of December, 2017.

                  THE RUSSELL'S LAW FIRM, PLC

                  By:_____
                  D. Christopher Russell
                  Attorney for Plaintiff