**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Willie F Williams, Jr., | No. CV-18-00061-TUC-DCB |
| Plaintiff, | **ORDER** |
| v. | |
| Atlantic Specialty Insurance Company, | |
| Defendant. | |

Defendant's Motion for Order to Compel Arbitration and Stay Proceedings is before the Court. Plaintiff filed an opposition and Defendant filed a reply. The Court determined that oral argument was not required to resolve this motion based on the quality of the briefs.

Defendant Atlantic Specialty Insurance Company (Atlantic) moves for an Order, pursuant to Arizona Revised Statutes (A.R.S.) § 12-1501, compelling Plaintiff to submit to arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § § 1, et seq., and/or the Arizona Uniform Arbitration Act, A.R.S. § § 12-1501, et seq., on the grounds

that all of Plaintiff's claims are subject to an enforceable agreement to arbitrate. In addition, Defendant moves this Court for an Order staying this action, if arbitration is ordered, until the completion of the arbitration. A.R.S. § 12-1502(D).

**BACKGROUND**

Defendant Atlantic, the Underwriter, issued an Occupational Accident Insurance Policy (Policy) to the Trucking Industry Group Insurance Trust (TIGIT), the Policyholder, of which Andrews Van Lines (Andrews) was the Participating Organization. (Doc. 11-2 at 32.) Plaintiff Willie F. Williams, aka Williams Trucking, works as an Independent Contractor for Andrews, a Carrier, based on the contractual relationship between them. (Doc. 14-1 at 1.) Plaintiff is in the business of transporting household goods and freight by motor vehicle. The Policy was effective beginning May 1, 2014. Plaintiff alleges and Defendant agrees, for purposes of this motion, that he is the Insured Person under the Policy as he worked for Andrews, with his premium payment deducted from his paycheck. (Doc. 14-3 at 1.) Obtaining this Policy was a condition of his employment. "The reasonable expectation of the parties was that the policy would insure Plaintiff for the loss of his ability to perform his then occupation as a commercial truck driver of household goods which included duties of loading and unloading household goods involving heavy lifting greater than 20 lbs." (Complaint, Doc. 1-3 at 8 ¶¶22-25.)

On December 16, 2014, Plaintiff fell from a ladder while moving household goods during a job for Andrews. (Doc. 1-3 at 9.) He was severely injured and lost consciousness for up to 30 minutes. *Id.* He reported the claim to Atlantic on December 16, 2014, but

had difficulty obtaining financial assistance with getting medical attention. (Doc. 1-3 at 10.) The injuries interfered with his ability to work. *Id.* Plaintiff was unsuccessful obtaining payments on this medical bills by Atlantic so he was forced to seek treatment from the Veteran's Administration (VA). *Id.* Plaintiff did not get his first MRI on the left shoulder until September 23, 2016. *Id.* The result showed a severe rotator cuff tear. (Doc. 1-3 at 11.) Plaintiff was unable to return to his former job and medical doctors advised him that he could not return to his job as a commercial truck driver. He had ongoing extreme pain and decreased range of motion in his left shoulder as a result of the fall. Over six months after the claim was reported, Plaintiff received a check dated June 22, 2015 for $3,500.00. (Doc. 1-3 at 11.) Plaintiff finally made a demand for payment of all benefits owed under the policy on November 6, 2017. Defendant responded that no other benefits were warranted. Shortly thereafter, Plaintiff filed the action in state court for breach of contract, bad faith and declaratory judgment directed to the arbitration clause of the policy. (Doc. 1-3 at 18.)

One of the terms and conditions of the Policy is the Arbitration Provision found in Section VII of the Policy. That Arbitration Provision provides, as follows:

> **Arbitration.** Any contest to a claim denial and/or any dispute in connection with a claim under this **Policy** will be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. The arbitration will occur at the offices of the American Arbitration Association nearest to the **Insured Person** or the person claiming to be the beneficiary. This provision does not apply if the **Insured Person** or the person claiming to be the beneficiary is a resident of a state where the law does not

> allow binding arbitration in an insurance policy, but only if this **Policy** is subject to its laws. In such a case. binding arbitration does not apply.
>
> This Arbitration provision permanently bars the institution of any individual or class action lawsuit brought by the Insured Person or beneficiary. With this binding Arbitration provision, the **Insured Person** for himself, herself or any beneficiary is waiving the right to a trial by jury.

(Doc. 11-2 at 27.)

On December 14, 2017, Williams filed the current lawsuit against Atlantic in the Superior Court for the State of Arizona. Defendant removed the action to federal court based on diversity of citizenship. The parties agree that Arizona substantive law is applicable. Prior to filing an Answer, Defendant filed the motion to enforce arbitration and stay proceedings. Plaintiff made a written demand for a jury trial in the Complaint (Doc. 1-3 at 6) and filed with this Court. (Doc. 12).

**STANDARD OF REVIEW**

Under the Federal Arbitration Act (FAA), "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, ... shall be valid, irrevocable, and enforceable...." 9 U.S.C. § 2; *see, e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113–19 (2001)(holding that FAA applies to employment contracts except those of transportation workers) (citing 9 U.S.C. §§ 1–2); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994). "Although [a] contract provides that [state] law will govern the contract's

construction, the scope of the arbitration clause is governed by federal law." *Tracer Research Corp*, 42 F.3d at 1294 (citing *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir. 1983)); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) ("Federal substantive law governs the question of arbitrability."); *Chiron Corp.*, 207 F.3d at 1130–31 (holding that "district court correctly found that the federal law of arbitrability under the FAA governs the allocation of authority between courts and arbitrators" despite arbitration agreement's choice-of-law provision).

"Notwithstanding the federal policy favoring it, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *Tracer Research Corp.*, 42 F.3d at 1294 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *see French v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 784 F.2d 902, 908 (9th Cir. 1986). Where the arbitrability of a dispute is in question, a court must look to the terms of the contract. *See Chiron Corp.*, 207 F.3d at 1130. " 'Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' " *Simula*, 175 F.3d at 719(quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983)); *see French*, 784 F.2d at 908.

However, a court "cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency [and] the [FAA] 'requires piecemeal resolution when necessary to give effect to an arbitration agreement.' " *Tracer Research Corp.*, 42 F.3d at 1294 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25) (emphasis in original). "[T]he judicial inquiry ... must be strictly confined to the question whether the reluctant

party did agree to arbitrate[.]" *United Steelworkers*, 363 U.S. at 582. "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp.*, 207 F.3d at 1130 (citing *Simula*, 175 F.3d at 719–20; *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)); *see Simula*, 175 F.3d at 720 (stating that "the district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms") (citing *Howard Elec. & Mech. v. Briscoe Co.*, 754 F.2d 847, 849 (9th Cir. 1985)).

In determining whether a valid agreement to arbitrate exists, the Court applies the same standard used when resolving summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 939 (D. Ariz. 2011); *see also Perry v. NorthCentral University, Inc.*, No. CV-10-8229-PCT-PGR, 2011 WL 4356499, *3 (D. Ariz. Sep. 19, 2011) (citing multiple cases that a motion to compel arbitration is resolved under the summary judgment standard). Therefore, the Court views all evidence in favor of the non-moving party to determine whether a valid arbitration agreement exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (explaining the summary judgment standard); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (same).

**ANALYSIS**

First, the parties agree that the validity of the Arbitration Provision is governed by Arizona law. Arizona contract law applies to this dispute. Federal courts sitting in diversity apply the forum state's choice of law rules to determine controlling substantive

- 6 -

law. *Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.,* 313 U.S. 487, 496 (1941).

Second, the parties also agree that the question of whether the Plaintiff is bound by the Arbitration Provision is a matter of law for resolution by this Court. Plaintiff has included in his lawsuit a claim for declaratory judgment (Count Three) seeking a ruling on the conscionability and enforceability of the, among others, Policy's Arbitration Provision. A.R.S. § 12-1831 provides as follows:

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

A court deciding a motion to compel arbitration must first decide whether and to what extent the parties agreed to arbitrate. *See Mitsubishi-Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). The Arizona Supreme Court has held that the question of whether a non-party is bound by an arbitration agreement is properly resolved by the court as a matter of law. *Smith v. Pinnamaneni,* 227 Ariz. 170, 177–78, ¶¶ 23–25 (Ariz. App.2011); see also *Chandler Med. Bldg. Partners v. Chandler Dental Group*, 175 Ariz. 273 (Ariz. App. 1993). ) "[O]ur threshold inquiry is whether the parties agreed to arbitrate; before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Samson v. NAMA Holdings*, LLC, 637 F.3d 915, 923 (9th Cir. 2011); see also

*John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964)(whether a party is bound by an arbitration clause is for the court to decide).

Here, the Defendant, as a signatory party to the Policy, argues that the Arbitration Provision must be enforced. The Plaintiff, as the nonsignatory party but arguably a third-party beneficiary, asks the Court not to enforce the Arbitration Provision. Plaintiff's position is that there is no written agreement to arbitrate. Plaintiff was not a party to the contract, consequently he did not negotiate and/or agree to the Policy terms. Plaintiff also invokes his right to a Seventh Amendment jury trial, contracted away by the inclusion of the Arbitration Provision. Plaintiff claims that the Arbitration Provision is void because of a breach of fiduciary duty owed to the Plaintiff, impossibility of performance, vis-ά-vis TIGIT, and a failure of consideration. Even if the Court finds that the Arbitration Provision is binding, Plaintiff argues it is unenforceable against Plaintiff because it contravenes the expectations of Plaintiff, is unreasonably oppressive, and is unconscionable. Plaintiff was required to obtain and pay for this Policy as a condition of his employment.

Courts may not enforce arbitration agreements that are unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Ninth Circuit recently held that the National Labor Relations Act (NLRA) precludes enforcement of an arbitration provision that included a concerted action waiver. *See Morris v. Ernst & Young, LLP*, 834 F.3d 975, 983–84 (9th Cir. 2016). However, this holding does not apply when the employee had a right to opt out of the concerted action waiver. *Id.* at 982 n.4; *see also Johnmohammadi v. Bloomingdale's, Inc.*,

755 F.3d 1072, 1076 (9th Cir. 2014). Here, Plaintiff is not an employee but an independent contractor and there was no opt-out provision available to him.

Courts interpret agreements to arbitrate "by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.,* 83 F.3d 1046, 1049 (9th Cir. 1996). Agreements to arbitrate may be "invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT & T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. at 24–25. Courts "ordinarily will not except a controversy from coverage of a valid arbitration clause unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Marchese v. Shearson Hayden Stone, Inc.,* 734 F.2d 414, 419 (9th Cir. 1984) (internal quotation and citation omitted). However, the federal policy favoring arbitration cannot "override[ ] the principle that a court may submit to arbitration only those disputes ... that the parties have agreed to submit." *Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287 (2010) (internal quotation and citation omitted).

There are certain exceptions to the general rule that an arbitration agreement is binding only on parties to the agreement. *Dueñas v. Life Care Ctrs. of Am., Inc.*, 236 Ariz. 130 (Ariz. App. 2014). One of those exceptions is for those who are third-party beneficiaries to a contract. In particular, under the third-party beneficiary exception, a non-signatory party may be barred from avoiding arbitration if he has received a direct benefit from the arbitration agreement. *Jeanes v. Arrow Ins. Co.*, 16 Ariz. App. 589, 592 (1972) (third-party beneficiary to a policy bound by the arbitration agreement included in the policy because insured and carrier agreed to it); *Smith v. Clouse Const. Co., LLC*, 2012 WL 5333576, at *5 (Ariz. App. Oct. 30, 2012) (plaintiff may not avoid the ADR requirement in the contract to which he claims third-party beneficiary status); *Estate of Decamacho ex rel. Guthrie v. La Solana Care & Rehab, Inc*., 234 Ariz. 18, 22 (Ariz. App. 2014) (same). The status as a third-party beneficiary is sufficient to enforce all contract terms, including an arbitration agreement.

Contrary to Plaintiff's argument, there is no need for an evidentiary hearing on whether he is bound by the Policy's Arbitration Provision because he is admittedly a non-signatory to the Policy.[1] Rather, the terms of the Policy itself, as well as his own allegations and admissions, constitutes evidence that Plaintiff is an intended third-party

---

[1] Here, however, the Court may not require an evidentiary hearing to determine whether Plaintiff actually signed the Policy with the Arbitration Provision. There must be a genuine factual question whether or not the Plaintiff executed the Policy, which is not the same issue as whether or not he read the agreement or understood the agreement or thought the agreement was like all the other prior agreements. Plaintiff signed the independent contractor agreement on January 1, 2014. (Doc. 14-1 at 11.) ("Read This Policy Carefully"- (Doc. 11-2 at 4.)) He did not sign the Workers Compensation and Employers Liability Insurance Policy. (Doc. 14-2.) He did sign the Driver Enrollment and Beneficiary Form. (Doc. 14-2.) Plaintiff did not sign the contract to enter into the Policy.

beneficiary under the Policy. And in this role, he seeks benefits under that contract. As a third-party beneficiary seeking contract benefits, Arizona law requires that he is bound by all contract terms – including the Arbitration Provision.

In *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185 (9th Cir.1986), the court explained that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Id.* at 1187-88. Among these principles are "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir.1995). In addition, nonsignatories can enforce arbitration agreements as third party beneficiaries. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,* 269 F.3d 187, 195 (3d Cir.2001). Equitable estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Wash. Mut. Fin. Group, LLC v. Bailey,* 364 F.3d 260, 267 (5th Cir.2004). Nonsignatories have been held to arbitration clauses where the nonsignatory "knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *DuPont,* 269 F.3d at 199 (citing *Thomson-CSF,* 64 F.3d at 778). The hurdle is whether there is evidence that Plaintiff knowingly exploited the Policy containing the Arbitration Provision despite having never signed the Policy. The Court interprets this as meaning that Plaintiff sought benefits under the Policy that he is disputing, which is necessarily the case because Plaintiff is seeking to obtain worker compensation benefits as an injured party under the terms of the Policy.

Defendant argues that Plaintiff is bound by the Arbitration Provision as a third party beneficiary. "To sue as a third-party beneficiary of a contract, the third party must show that the contract reflects the express or implied intention of the parties to the contract to benefit the third party." *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211 (9th Cir.2000). A third party beneficiary might in certain circumstances have the power to sue under a contract; it certainly cannot be *bound* to a contract it did not sign or otherwise assent to. *See Motorsport Eng'g, Inc. v. Maserati SPA,* 316 F.3d 26, 29 (1st Cir.2002); *Abraham Zion Corp. v. Lebow,* 761 F.2d 93, 103 (2d Cir.1985). In the Third Circuit, "whether seeking to avoid or compel arbitration, a third party beneficiary has been bound by contract terms where its claim *arises out of* the underlying contract to which it was an intended third party beneficiary." *DuPont,* 269 F.3d at 195 (emphasis added). Applying the general rule to this particular factual scenario, a nonsignatory is not bound by an Arbitration Provision, Plaintiff is not required to arbitrate his individual private cause of action. *Comer v. Micor, Inc.,* 436 F.3d 1098, 1103-04 n. 10-11 (9th Cir. 2006) (ERISA).

Ultimately, this Court may also resolve this motion based on the Arbitration Provision being unconscionable alone. Under Arizona law "[a]n unconscionable contract is unenforceable." *Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013). "A contract may be substantively unconscionable when the terms of the contract are so one-sided as to be overly oppressive or unduly harsh to one of the parties." *Id.* "[A] claim of unconscionability can be established with a showing of substantive unconscionability alone, especially in cases involving either price-cost disparity or limitation of

remedies." *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 59 (Ariz. 1995) (in banc). Arbitration agreements are unenforceable if they fail "to provide for all of the types of relief that would otherwise be available in court." *Circuit City Stores, Inc.,* 279 F.3d at 895.. Under Arizona law, "[a]n arbitration agreement may be substantively unconscionable if the fees and costs to arbitrate are so excessive as to 'deny a potential litigant the opportunity to vindicate his or her rights.' " *Clark*, 307 P.3d at 79 (quoting *Harrington v. Pulte Home Corp.*, 119 P.3d 1044, 1055 (Ariz. App. 2005)). "The party seeking to invalidate an arbitration agreement on such grounds has the burden of proving that arbitration would be prohibitively expensive." *Id.* at 80. In determining whether arbitration would be prohibitively expensive, courts consider the cost to arbitrate, evidence showing whether the party can pay the costs to arbitrate, and whether the arbitration agreement or rules of arbitration permit a party to waive or reduce the costs of arbitration based on financial hardship. *Id.*

Plaintiff has convincingly shown that arbitration is prohibitively expensive and that he lacks the financial resources to pay the arbitration costs. Finally, the Arbitration Provision itself does not provide for a reduction in costs for financial hardship and contains no reference to the rules that will govern the arbitration; the flexible fee option is still quite expensive and offers no overall reduction in the arbitration fees. Plaintiff has been unable to work based on the injury that is the subject of this action. Therefore, the Court concludes that Plaintiff has met his burden to show that arbitrating his claims would be prohibitively expensive and would prevent him from vindicating his rights. As such, the arbitration provision is unconscionable. In Arizona, "[t]he equitable principles

- 13 -

underlying codification of unconscionability are part and parcel of the statute." *Maxwell*, 907 P.2d at 60.

> [C]ourts will not lend their hand to the enforcement of oppressive contracts, and the statute mandates that Arizona courts must either (1) refuse to enforce an unconscionable contract, (2) refuse to enforce any unconscionable portion of a contract, or (3) limit the application of any unconscionable clause of a contract to avoid any unconscionable result.

*Id.* (citing A.R.S. § 47-2303(A)).

The Arbitration Provision at issue is substantively unconscionable and will not be enforced by this Court. *See Zaborowski v. MHN Gov't Servs., Inc.*, 601 Fed.Appx. 461, 464 (9th Cir. 2014) (district court did not abuse its discretion by refusing to enforce arbitration agreement with five unconscionable provisions); *Newton v. Am. Debt Servs., Inc.*, 601 Fed.Appx. 461, 464 (9th Cir. 2013) (district court did not abuse its discretion by refusing to enforce arbitration agreement with four unconscionable provisions). Defendant asks the Court to write in provisions concerning financial hardship and reduction and/or waiver of fees that are not currently part of the Arbitration Provision. (Doc. 20 at 6 ¶¶13-27; Doc. 14-4 at 1-3.) The extent of unconscionability here would force the Court to rewrite, rather than interpret, the Arbitration Provision. *See Capili v. Finish Line, Inc.*, No. 15-16657, 2017 WL 2839504, at *2 (9th Cir. July 3, 2017). The Court is taking Plaintiff's allegations of financial hardship and inability to afford the arbitration costs as true, as the allegations of the nonmoving party, because he has been out of work since the injury, has been unable to pay his medical bills and so far only received $3,500.00 from the Defendant.

Accordingly,

**IT IS ORDERED** that the Defendant's motion to stay and compel arbitration (Doc. 11) is **DENIED**. Defendant must file an Answer within twenty (20) days of the date on this Order and the Court will then set a scheduling conference and date to file a joint proposed scheduling order.

Dated this 2nd day of May, 2018.

_____
Honorable David C. Bury
United States District Judge